Williams, J.
The ultimate relief sought by the plaintiff, in the action below, was an injunction against the city of Tiffin, preventing it from taking natural gas from the premises in question. The reformation of the lease under which the plaintiff claimed the exclusive right to the gas, was but a preliminary step in the establishment-of the plaintiff’s right to the injunction, and unimportant except in aid of that remedy. This inquiry, therefore, is directed primarily to the ascertainment of the rights of the city under the lease obtained by it from Shoupe, rather than to those of the plaintiff against Shoupe, although the former are to some extent, but not entirely, dependent on the latter. It appears from the finding of facts, that when Shoupe purchased the land and received his conveyance from Taylor, the lease made by the latter to Duke and by him assigned to the plaintiff was, together with the assignment, on record in the proper office; and it was excepted from the covenants in the deed; but the term of years for which the lease was made had been allowed to expire without any effort to develope oil or gas, and no person was in possession of the land claiming under the lease or under any extension of it, nor was any agreement for such extension on record. This was also the condition of affairs when the city of Tiffin obtained its lease from Shoupe, who was then in the exclusive occupancy of the land ; and the receipt given by Shoupe to the plaintiff *440 for rent, which it is claimed amounted to an extension of the lease, was not on record, nor possession held under it. The city upon receiving its lease immediately entered into the actual possession of the land and has since continued in possession.
One question arising on these facts, and probably the most important one, relates to the construction and effect of the act of April 11, 1888 [85 O. L., 179] supplemental to section 4112, and now section 4112a, of the Revised Statutes. It provides: “That all leases and licenses, and assignments thereof or of any interest therein, heretofore executed, given or made, for, upon or concerning any lands or tenements in this state, whereby any right is given or granted to operate, or to sink or drill wells thereon for natural gas and petroleum or either, or pertaining thereto, shall be recorded in the lease record in the office of the recorder of the proper county by the first day of September, 1888, and all such leases, licenses and assignments hereafter executed, given or made, shall be filed for record as aforesaid, forthwith and recorded in said lease record, without delay, and shall not be removed until recorded, and no such lease or license hereafter executed or given, unless the person-claiming thereunder is in actual and open possession, shall have any force or validity until the same is filed for record as aforesaid, except as between the parties thereto, nor shall any such lease or license heretofore executed or given and not recorded by the first day of September, 1888, have any force or validity thereafter until filed for record, except as between the parties thereto, and as to persons claiming thereunder and in actual and open possession.”
This statute, it will be observed, applies to all *441 oil and gas leases and licenses, including those entered into prior, as well as subsequent, to the first day of September, 1888, makes special provision with respect to their registration, and prescribes the consequences of omission to have them recorded as required. It is a settled rule of construction, that special statutory provisions for particular cases operate as exceptions to general provisions which might otherwise include the • particular eases, and such cases are governed by the special provisions. Under that rule this statute takes leases and licenses to which it is applicable out of the operation of sections 4112, and 4134, Revised Statutes, and itself furnishes the rule governing the registry of such instruments, and the effect upon their validity of the failure of registration. In this last respect the declared effect is not essentially different from that resulting from the omission to place on record real estate mortgages. The language of the statute regulating the registry of such mortgages is: “All mortgages, executed agreeably to the provisions of this chapter, shall be recorded in the office of the recorder of the county in which the mortgaged premises are situated, and shall take effect .from the time the same are delivered to the recorder of the proper county for record.” Revised Statutes, section 4133. Since the enactment of that statute it has uniformly been held, and in many eases, that until the mortgage is properly deposited for record, it is without effect, either at law or in equity, as against a third. person who acquires an interest in or lien on the property, although he acquired it with knowledge of the existence of the mortgage. This result arises from the language of the statute requiring such instruments to be recorded, and de *442 daring that they shall take effect from the time they are delivered for record; the object of the statute being, it is held, to avoid all questions of notice other than that to be obtained from an examination of the record.
The statute we have here under consideration is not less positive in its requirement that oil and gas leases and licenses shall be recorded as therein provided, and is even more explicit in its declaration that until properly filed for record they shall be without any force or effect except as between the parties to them, unless the person claiming thereunder is in the actual and open possession of the lands. Without such record or possession all leases or licenses within the purview of the statute are nugatory and ineffectual for any purpose, both at law and in equity, against a subsequent lessee or other third person dealing with the land, notwithstanding he had at the time actual notice of the prior unrecorded instrument. The only notice to third persons that can be of any avail is, under this statute, the notice afforded by the proper lease record, or actual possession of the land. Shoupe having the exclusive possession of the land in controversy when the city of Tiffin obtained its lease from him, the estate and interest which the lease purported to grant vested in the city, unless some superior right of the plaintiffs then appeared of record; and there was none, if that cannot be claimed for the original lease made by Taylor to Duke and assigned to the plaintiff. That lease was dated June 10, 1886, and, by its terms, was to continue for the period of five years, “and as much longer as oil or gas is produced or found in paying quantities thereon;” and to ascertain the capacity of the land in that respect the *443 lessee was required to complete a well on it within nine months from the date of the lease, or, on failure to do so within that time, to pay an annual rental until the well should be completed. Upon payment of the rental his right to complete the well continued for the specified term of five years, but no longer; and if within that time oil or gas was produced in paying quantities, then the lease was to continue as long- as the product should prove profitable; but if neither of those articles was so produced within the specified time the lease was at an end. This is the construction which the parties themselves have put upon the lease, and is, no doubt, the correct one; otherwise the subsequent agreements for its extension were unnecessary. , There having been no possession taken under the lease, nor effort made to develope its producing qualities as contemplated within the required time, an examination of the record, while it would have discovered the existence of the lease, would also have disclosed that it had expired and ceased to be a subsisting burden on the land. The agreements between plaintiff and Taylor for the extension of the lease were, in effect, new leases; and their record, or possession under them, was necessary to give them any validity whatever except as between the parties to them. And, such record or possession was also necessary with respect to the receipt given to the plaintiff by Shoupe after he became the owner of the premises, if that is to be regarded as an agreement by him to extend the terms and conditions of the original lease. As neither of these instruments was of record, nor anyone claiming- under either in possession of the land when the city of Tiffin took its lease from Shoupe, and as the original lease had then expired, *444 there was no obstacle arising from either, in the way of the city then obtaining- a valid lease from Shoupe, superior to the claim asserted here by the plaintiff. Such a Lease the city appears to have obtained, and it cannot be deprived of its enjoyment at the suit of the plaintiff.
We are also of opinion that the plaintiff is not entitled to the reformation sought of the original lease, as against Shoupe. When he bought the land, it was not included in that lease; and while its exception from the covenants in his deed was sufficient to apprise him of the alleged mistake in the description, the record disclosed that the lease had ceased to be a subsisting incumbrance or claim against the land at the time of his purchase; so' that, he might then buy with safety sq far as that lease was concerned. And, as neither of the agreements for an extension of the lease had been placed on record nor possession taken under either, he took his title discharged of any claim that might be founded on them. Furthermore, it is established by the finding of facts that at the time of his purchase, Shoupe had no knowledge of either of the agreements of extension, and that he paid full value for the land. It is well settled that a purchaser for value is not affected by an unrecorded instrument unless he has actual notice of its existence; circumstances that should put him on inquiry is not enough. Morris v. Daniels, 35 Ohio St., 406; Varwig v. Railroad Co., 54 Ohio St., 455. So that, independent of the effect of section 4112a, the title acquired by Shoupe was not subject to any outstanding claim then existing in favor of the plaintiff; and, if there is any ground for the reformation sought it must be found in the receipt given to the plaintiff by him after he became the *445 owner of the land. That receipt, it is contended, amounts to an agreement for the continued obligatory force of the original lease, according to all of its terms and conditions, upon the land intended to be included in it. But the same alleged mistake in the description of the land is made in the receipt itself, and to give it the effect claimed for it, its reformation should precede that of the lease.
The receipt is materially different from the two papers signed by Taylor; the latter contain an express consent or agreement to extend all the terms and conditions of the original lease for the periods therein mentioned, while the former contains no stipulation of that kind, but is a receipt simply for a specified sum of money for a year’s rent. The misunderstanding of the parties with respect to this receipt is not inexplicable. The plaintiff, having in mind the former agreements of Taylor extending the lease upon like payments, may very well have intended and understood Shoupe’s receipt to have the same effect; but Shoupe, having no knowledge of those agreements, and relying upon the information obtained from Taylor that the only lease made by him had but one year to run, might just as properly have understood and intended the receipt to be for that year’s rent and to have no other effect. The circuit court so found, and we see no reason for disturbing that finding. This mutual misunderstanding would be sufficient to preclude a reformation of the instrument, for that would result in making a contract, upon the terms of which the minds of the parties never met. The receipt contains no express agreement, nor is it claimed there was any, even verbal, between Shoupe and the plaintiff concerning the lease. It is sought, therefore, to establish an implied con *446 tract for the extension, from extraneous facts and circumstances, and have a reformation in conformity therewith. If such relief is attainable in any case, it should only follow clear and convincing proof that the party against whom it is sought was possessed of full knowledge of all the facts necessary to the creation of the contract.

Judgment affirmed.